Opinion issued May 16, 2013



In The

# Court of Appeals

For The

## First District of Texas

————————————————

### NO. 01-11-00444-CR

————————————————

**MARVIN ARIEL PAGOADA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Case No. 1230825

---

## MEMORANDUM OPINION

A jury convicted appellant Marvin Ariel Pagoada of capital murder for his role as a co-conspirator in a robbery that resulted in murder. *See* TEX. PENAL CODE ANN. § 7.02 (West 2011). Pagoada contends that extraneous-offense evidence was

improperly admitted and that the evidence was legally insufficient to prove that he should have anticipated the murder. We affirm.

## Background

Pagoada participated with the same group of men in two robberies, both of which led to violent shootings. In the first episode, Pagoada went in a car with four others to rob a man. The group parked outside a bar called Salina's Ballroom, and they waited for their target to come outside. As soon as he appeared, Pagoada and two other men got out of the car. The two others, known as Tomate and Gera, ran ahead and began struggling with the victim while Pagoada waited by the car. The victim tried to take Gera's gun, and during the course of the fight Tomate grabbed the weapon and shot him in the head. The group drove away without taking any money from the victim, who ultimately survived.

Two days later, Tomate invited Pagoada to participate in another robbery. Tomate had learned about a planned drug delivery. Pagoada joined on the understanding that he would receive some of the money. According to Pagoada, he and Tomate drove to an apartment complex and waited outside in a car while Gera and some others went up to the apartment where the drug delivery was supposed to happen.

Inside the apartment, complainant Clarence Howard was waiting to hear from a cocaine dealer. Howard was accompanied by Nadia Funez and Jose Garcia,

2

two intermediaries who had helped to arrange a transaction to purchase buy $51,000 worth of cocaine. Funez was acquainted with Pagoada, Tomate, and several of the other men planning to rob Howard.

Three men knocked loudly on the apartment door, shouted "policia, policia, policia," and then broke in. The intruders wore hose over their faces to obscure their identities, and at least two of them had guns. They pushed Funez and Garcia aside and struggled with Howard, who then ran into the bedroom. The intruders shot at Howard two or three times, mortally wounding him. The intruders then fled, grabbing Howard's duffel bag as they ran off.

The police arrested Pagoada based on a tip they received from Garcia, who received strange phone calls after his cell phone was stolen during the robbery. After waiving his *Miranda* rights, Pagoada told police that he had been involved in the robbery, Howard's murder, and the earlier robbery at Salina's Ballroom with some of same men. He provided the names of several other suspects involved in the murder, including Gera, who also admitted to his participation. Ballistics evidence connected weapons found on members of this group of men with the crime.

Pagoada was charged with capital murder. After a jury trial, he was convicted of capital murder as co-conspirator and sentenced to life in prison without parole.

**Analysis**

## I. Extraneous offense evidence

In his first issue, Pagoada argues that the trial court abused its discretion by admitting evidence of his involvement in the Salina's Ballroom robbery. *See* TEX. R. EVID. 404(b). He contends that this extraneous offense evidence was not probative as to whether he should have anticipated that a murder could occur in the course of the subsequent robbery. Alternatively, he suggests that even if the evidence of the earlier offense had probative value, it was substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403.

We review the trial court's admission of extraneous offense evidence for abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). A trial court abuses its discretion only when its ruling lies outside the "zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391. A trial court's ruling admitting evidence pursuant to Rule 404(b) is generally within this zone if there is evidence that (1) the extraneous offense is relevant to a material issue not merely involving a propensity to commit crimes, and (2) "the probative value of [the] evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *De La Paz*, 279 S.W.3d at 344.

4

## A.     Relevance of extraneous offense (Rule 404(b))

Texas Rule of Evidence 404(b) prohibits admitting, before the sentencing phase of the trial, "evidence of other crimes, wrongs or acts . . . to prove the character of person in order to show action in conformity therewith."  TEX. R. EVID. 404(b).  But such evidence may be admitted for other purposes, "such a proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."  *Id.*  Rule 404(b) has been characterized as a "rule of inclusion rather than exclusion," meaning that the rule excludes only evidence offered solely for the purpose of proving bad character.  *De La Paz*, 279 S.W.3d at 343 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).  The proponent of the uncharged misconduct evidence merely must be able to explain the logical and legal rationales that support admission on a basis other than bad character or propensity purposes.  *Id.*  The proponent need not stretch or fit the facts into falling into one of the exceptions expressly identified in the rule (proof of motive, opportunity, etc.).  *Id.*

Pagoada was charged with capital murder based on his role as a co-conspirator to a planned burglary.  Co-conspirator liability is defined by section 7.02(b) of the Texas Penal Code which provides:

> If in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in

5

> furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b). To show that the murder was committed in furtherance of the conspiracy, the State presented evidence that Pagoada was part of the conspiracy to rob Howard and that the murder occurred in the course of the robbery. To show that the murder should have been anticipated, the State offered the extraneous offense evidence of the Salina's Ballroom robbery, where Tomate, whom Pagoada admitted was also involved in the later Howard murder, shot the victim.

Given that his co-conspirator shot the victim in the course of the prior robbery, the extraneous offense evidence supports the State's theory that Pagoada reasonably should have anticipated that these same co-conspirators, or others, might shoot and kill someone in their next robbery. Less direct evidence has been found relevant to what the accused should have reasonably anticipated under section 7.02(b). *See Love v. State*, 199 S.W.3d 447, 453 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (holding defendant's admission that he knew co-conspirators likely carried guns sufficient to show he should have anticipated that they might shot their robbery victim); *Thompson v. State*, 54 S.W.3d 88, 96-97 (Tex. App.—Tyler 2001, pet. ref'd) (evidence of defendant's participation in a violent gang was sufficiently relevant to address the issue of whether he should have anticipated one of those gang members would murder); *see also Coleman v.*

*State*, 956 S.W.2d 98, 102 (Tex. App.—Tyler 1997, pet. ref'd) (defendant's knowledge co-criminals were bringing guns along sufficient to show the defendant should have anticipated murder might result in carjacking attempt).

The bar to the admission of extraneous offense evidence has never been set as high as Pagoada suggests, requiring that the evidence shows that a particular co-criminal had murderous past conduct. Thus, the trial court did not abuse its discretion by admitting the Salina's Ballroom evidence as relevant to Pagoada's knowledge.

## B.     Unfair prejudice (Rule 403)

Even if evidence is offered for a permissible purpose under Rule 404(b), the trial court may exclude such evidence if the probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403; *Dennis*, 178 S.W.3d at 180. All incriminating evidence is in some sense prejudicial; unfairly prejudicial evidence is evidence having an undue tendency to suggest that a decision be made on an improper basis, commonly, though not necessarily, an emotional one. *Montgomery*, 810 S.W.2d at 389 (quoting Advisory Committee's Note to FED. R. EVID. 403). Rule 403 nevertheless favors the admissibility of relevant evidence. *Id.* Once the trial court has determined that the proffered evidence has relevance apart from showing conformity with a certain character trait, the evidence should be admitted. *Id.*

The extraneous offense evidence was directly relevant to an essential element of the charged crime, namely that Pagoada should have anticipated his companions' violent methods during a robbery and not merely that they committed robberies. *See Love*, 199 S.W.3d at 453; *Coleman*, 956 S.W.2d at 102. In addition to this relevance, the evidence was not needlessly duplicative as there was little other evidence that Pagoada knew his companions would use violence or carried guns. The trial court also limited mention of any other extraneous offenses to the single, most probative incident.

Pagoada asserts that the extraneous offense evidence had little probative value because, according to his version of events, different people went into the apartment than had been violent at Salina's Ballroom. But Pagoada's story contradicts this claim. Pagoada admitted that Gera, who had brought a gun to rob the victim at Salina's Ballroom, was one of the men who went into the apartment to rob Howard. Tomate and Gera, who attacked the victim at Salina's Ballroom, accompanied Pagoada at both robberies. Accordingly, we conclude that the Salina's Ballroom evidence was highly probative of what Pagoada should have anticipated in the later robbery.

We hold that the trial court did not abuse its discretion by determining that the probative value of the evidence of Pagoada's involvement in the Salina's

Ballroom robbery was not substantially outweighed by the danger of unfair prejudice. We overrule appellant's first issue.

## II. Sufficiency of the evidence

In his second issue, Pagoada argues that the evidence shows only that he was the driver and that he stayed in the car while Howard was robbed and murdered. He thus contends that the State did not present sufficient evidence that he should have anticipated Howard's murder in the course of the apartment robbery.

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we will determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). As the exclusive judge of the facts, the jury may believe or disbelieve all or any part of a witness's testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). We presume that the fact finder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). On appeal we may not re-evaluate the weight and credibility of the record evidence and thereby substitute our own judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). In reviewing the evidence,

9

circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

To sustain a capital murder conviction under section 7.02(b), the State was obligated to present evidence that Pagoada should have anticipated that murder might result from the conspiracy to rob Howard. *See* TEX. PENAL CODE ANN. § 7.02(b); *see also Longoria v. State*, 154 S.W.3d 747, 754, 756 (Tex. App.— Houston [1st Dist.] 2004, pet. ref'd).

In this case, the State introduced evidence that Pagoada knew that his companions shot a man when they committed a prior robbery he participated in and that they carried guns on their robberies. This evidence supports the State's theory that Pagoada should have anticipated that someone could be killed when he accompanied Tomate and Gera for the second robbery. Pagoada argues this does not prove what he should have anticipated because at the later robbery he stayed behind in the parking lot with Tomate, who was the conspirator who shot the victim at the first robbery.

Pagoada admitted that Gera brought a gun to the Salina's Ballroom robbery and that Gera went into the apartment to rob Howard. This evidence alone could support the conclusion that he should have anticipated that someone might be killed. Further, Pagoada knew from the Salina's Ballroom incident that Gera and

10

Tomate used violence to rob their victims. This also supports the jury's determination that Pagoada should have anticipated that murder could result in the apartment robbery in which he agreed to participate.

Far less direct evidence has been held legally sufficient to show that a defendant should have anticipated a resulting murder. In *Love v. State*, 199 S.W.3d 447 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd), this court found that a defendant's prior statement to others that his co-conspirators carried guns during robberies was sufficient to show that he should have anticipated murder might result. 199 S.W.3d at 453–54. In *Thompson v. State*, the Tyler Court of Appeals held that a defendant's association with a violent gang was sufficient to show a gang-member's robbery might result in murder. 54 S.W.3d at 95–97; *see also Coleman*, 956 S.W.2d at 102 (knowledge that companions had guns in the car when they went to steal a Mercedes sufficient to show defendant should have anticipated resulting murder).

Accordingly, viewing the evidence in the light most favorable to the verdict, we hold that a rational juror could have found beyond a reasonable doubt that Pagoada should have anticipated that a murder could occur in furtherance of the conspiracy to commit robbery. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

11

## Conclusion

We affirm the judgment of the trial court.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).